1  TOMIO B. NARITA (SBN 156576)
   JEFFREY A. TOPOR (SBN 195545)
2  SIMMONDS & NARITA LLP
   44 Montgomery Street, Suite 3010
3  San Francisco, CA 94104-4816
   Telephone: (415) 283-1000
4  Facsimile:   (415) 352-2625
   tnarita@snllp.com
5  jtopor@snllp.com

6  Attorneys for Defendants

7

8                    UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10                     SAN FRANCISCO DIVISION

11  DAMARIS CRUZ, individually and      )   CASE NO.: C 07 05688 SC
    on behalf of all others similarly   )
12  situated,                           )
                                        )   **NOTICE OF MOTION AND**
13          Plaintiff,                  )   **MOTION BY DEFENDANTS**
                                        )   **FOR SUMMARY JUDGMENT;**
14          vs.                         )   **MEMORANDUM OF POINTS**
                                        )   **AND AUTHORITIES IN**
15  MRC RECEIVABLES CORP.;              )   **SUPPORT**
    MIDLAND CREDIT                      )
16  MANAGEMENT, INC.; A.                )   Date:   March 21, 2008
    SYRAN, an individual,              )   Time:  10:00 a.m.
17                                      )   Dept:  Courtroom 1, 17th Floor
            Defendants.                 )
18  _____   )   The Honorable Samuel Conti
                                        )
19

20

21

22

23

24

25

26

27

28

1  TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:

2      PLEASE TAKE NOTICE that on March 21, 2008, at 10:00 a.m., or as soon

3  thereafter as the matter may be heard in Courtroom 1 of this Court, located at 450

4  Golden Gate Avenue, San Francisco, California 94102, the Honorable Samuel

5  Conti presiding, defendants MRC Receivables Corporation, Midland Credit

6  Management, Inc. and A. Syran ("Defendants") will and hereby do move this

7  Court for an Order, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure,

8  granting summary judgment in favor of Defendants.

9      The motion is made on the grounds that there is a complete absence of any

10  evidence establishing that Defendants violated the Fair Debt Collection Practices

11  Act, 15 U.S.C.§ 1692, *et seq*., and on the grounds that Defendants are entitled to

12  judgment as a matter of law.  Defendants request that the Court enter summary

13  judgment in their favor, and enter an Order dismissing the entire action with

14  prejudice.

15      The Motion is based upon this Notice and Motion, the Memorandum of

16  Points and Authorities In Support of the Motion, the declaration of James

17  Alexander Syran in Support of Defendants' Motion for Summary Judgment, all the

18  records on file in this action, and on such other and further evidence and argument

19  as the Court may permit in connection with the Motion.

20  DATED:  February 15, 2007          SIMMONDS & NARITA LLP
21                                     TOMIO B. NARITA
                                       JEFFREY A. TOPOR
22

23

24                                     By:  __/Tomio B. Narita/_____
25                                          Tomio B. Narita
                                            Attorneys for Defendants
26

27

28

# TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A. The Content Of The Letters . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B. The Allegations Of The Complaint . . . . . . . . . . . . . . . . . . . . . . . 3

III. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A. Standards Governing Motions For Summary Judgment . . . . . . . . 4

    B. The FDCPA Was Passed To Prohibit Harassment And Abuse . . . . 5

    C. Under The "Least Sophisticated Debtor" Standard, Any Bizarre,
       Unreasonable or Idiosyncratic Interpretation Of The Letters
       Must Be Rejected . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    D. There Is Nothing "False" About The Letters' Accurate Statement
       That Cruz's Failure To Fulfill Her Credit Obligations May Result
       In A Negative Report To A Consumer Reporting Agency . . . . . . . . 7

    E. The Use Of Mr. Syran's Name And Title Is Not False, Deceptive
       Or Misleading . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    F. The Ninth Circuit Has Never Adopted The "Meaningful
       Involvement" Doctrine And It Does Not Apply Here . . . . . . . . . . 13

    G. Other District Courts Have Properly Refused To Equate
       Collection Company Executives And Attorneys . . . . . . . . . . . . . . 16

IV. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Avila v. Rubin*,
84 F.3d 222 (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 16

*Camacho v. Bridgeport Fin., Inc.*,
430 F.3d 1078 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Campuzano-Burgos v. Midland Credit Management, Inc.*,
497 F. Supp. 2d 660 (E.D. Pa. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Chuway v. National Action Fin. Servs.*,
362 F.3d 944 (7th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Clark v. Capital Credit & Collection Servs., Inc.*,
460 F.3d 1162 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Clomon v. Jackson*,
988 F.2d 1314 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Devereaux v. Abbey*,
263 F.3d 1070 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Dunlap v. Credit Protection*,
419 F.3d 1011 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Durkin v. Equifax Check Servs., Inc.*,
406 F.3d 410 (7th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 9

*Evory v. RJM Acquisitions Funding L.L.C.*,
505 F.3d 769 (7th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Federal Election Comm'n v. Toledano*,
317 F.3d 939 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Fox v. Citicorp Credit Servs., Inc.*,
15 F.3d 1507 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Guerrero v. RJM Acquisitions LLC*,
499 F.3d 926 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 11, 12

*Hapin v. Arrow Fin. Serv.*,
428 F. Supp. 2d 1057 (N.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Hogan v. MKM Acquisitions, LLC*,
241 F. Supp.2d 896 (N.D. Ill. Jan. 17, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Jackson v. Midland Credit Management, Inc.*,
445 F. Supp. 2d 1015 (N.D. Ill. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Johnson v. NCB Collection Servs.*,
799 F. Supp. 1298 (D. Conn. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Jones v. CBE Group, Inc.*,
215 F.R.D. 558 (D. Minn. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Kalinina v. Midland Credit Management, Inc.*,
2004 WL 3187150 (N.D. Cal. Aug. 10, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Kistner v. Law Offices of Michael P. Margelefsky, LLC*,
2007 WL 120150 (N.D. Ohio Jan. 10, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Kuehn v. Cadle Co.*,
2007 WL 1064306 (M.D. Fla. Apr. 6, 2007) . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Lewis v. ACB Bus. Servs.*,
135 F.3d 389 (6th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*McStay v. I.C. Sys., Inc.*,
308 F.3d 188 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Peter v. GC Servs. L.P.*,
310 F.3d 344 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Pressley v. Capital Credit and Collection*,
760 F.2d 922 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Rumpler v. Phillips & Cohen Assocs., Ltd.*,
219 F. Supp. 2d 251 (E.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*State of Calif., on Behalf of Calif. Dept. of Toxic Substances Control
v. Campbell*,
138 F.3d 772 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Swanson v. Southern Or. Credit Serv., Inc.*,
869 F.2d 1222 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Taylor v. Perrin, Landry, deLaunay & Durand*,
103 F.3d 1232 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. National Fin. Servs., Inc.*,
98 F.3d 131 (4th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Wade v. Regional Credit Ass'n*,
87 F.3d 1098 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8, 9

*Wan v. Commercial Recovery Sys., Inc.*,
369 F. Supp. 2d 1158 (N.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*White v. Financial Credit Corp.*,
2001 WL 1665386 (N.D. Ill. Dec. 27, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*White v. Goodman*,
200 F.3d 1016 (7th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Wilson v. Quadramed*,
225 F.3d 350 (3d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Womack v. National Action Fin. Servs.*,
2007 WL 2155669 (E.D. Pa. July 25, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Youngblood v. GC Servs. Ltd. Partnership*,
186 F. Supp. 2d 695 (W.D. Tex. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## FEDERAL STATUTES

Fair Debt Collection Practices Act,
    15 U.S.C. § 1692 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
    15 U.S.C. § 1692e . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
    15 U.S.C. § 1692e(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 16
    15 U.S.C. § 1692e(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    15 U.S.C. § 1692e(9) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 10, 12, 13
    15 U.S.C. § 1692e(10) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
    15 U.S.C. § 1681f . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Fair Credit Reporting Act,
    15 U.S.C. § 1681s-2(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## STATE STATUTES

California Civil Code,
    § 1785.26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## OTHER AUTHORITIES

Federal Rules of Civil Procedure,
    Rule 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

1

## I.    **INTRODUCTION**

Defendant Midland Credit Management, Inc. ("MCM") sent three form settlement letters to plaintiff Damaris Cruz ("Cruz") on behalf of the owner of her debt, defendant MRC Receivables Corporation ("MRC").  The letters offered Cruz the opportunity to settle her account for significantly less than she owed – in one instance for only 25% of the amount due.  Cruz did not accept the settlement offers.  Instead, she filed this purported class action, claiming that the letters are false, misleading or deceptive, in violation of sections 1692e and 1692f of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA" or "the Act").  None of her claims have merit, however, so summary judgment should be granted for Defendants.

Cruz claims that the letters "falsely" state that her failure to pay her debt may result in a negative credit report to the consumer reporting agencies.  But this statement is true, not false.  The Ninth Circuit and courts around the country have recognized that the FDCPA does not prohibit a collector from truthfully advising a debtor that the collector may furnish information to consumer reporting agencies.

Cruz also alleges that the letters violated the FDCPA, because they included a signature block with the typed name and title of an MCM executive, defendant A. Syran.  Cruz claims that Mr. Syran was not personally involved in the collection of her debt, so the letters are misleading.  But the record shows that Mr. Syran did authorize and approve of the use of these form letters in his capacity as an officer of MCM.

The letters are <u>not</u> personalized letters.  They are mass-produced "form" letters.  Even the "least sophisticated debtor" understands that a "form" letter, by its very nature, is <u>not</u> individually reviewed and approved before a decision is made to send it.  Not even the hypothetical "least sophisticated debtor" would reasonably believe that Mr. Syran was personally involved in the decision to send a particular form letter to a particular debtor.

There are no false statements in the letters. They accurately state the terms of a settlement offer that MCM was willing to honor. Nor are the letters misleading. They repeatedly emphasize that they are from the company as a whole, and would not mislead the debtor into believing that Mr. Syran drafted and approved each letter, one at a time. When the letters are read as a whole, as they must be, it is clear that Mr. Syran was identified to provide assurances that the offer had been authorized by the company. Indeed, this Court, the Ninth Circuit and the Seventh Circuit have approved identical letters, rejecting arguments that the offers were deceptive and misleading.

Cruz's interpretation of the letters is patently unreasonable and must be rejected. Summary judgment should be granted for Defendants.

## II.  **STATEMENT OF FACTS**

### A.  **The Content Of The Letters**

MCM sent three settlement letters to Cruz. *See* Complaint, Exs. A, C, E. The letters are substantively identical and it is undisputed that they are "form" letters. Each letter is titled "Settlement Opportunity," and each offered Cruz the opportunity to settle her debt at a discount of up to seventy-five percent of the outstanding balance. *See id.*; *see also* Declaration of James Alexander Syran In Support of Defendants' Motion for Summary Judgment ("Syran Decl."), at ¶ 2. In pertinent part, the letters stated as follows:

> Dear DAMARIS CRUZ.
>
> You wont want to miss this settlement opportunity offered by Midland Credit Management, Inc., servicer of the above referenced account.
>
> Recognizing that you may have gone through some financial difficulty and have been unable to satisfy your account we would like to offer you a **positive and flexible option** to resolve your account for [40 to 75]% off the Current Balance.
>
> **If we receive payment by [date] in the amount of [$XX.XX], we will consider the account balance paid in full!**

**CALL NOW!** To take advantage of this opportunity, please contact us **TOLL-FREE at [phone number]** and any of our Account Managers will be able to assist you.

**MAIL!** You may prefer to settle your Current Balance by using the Acceptance Certificate below. Simply detach the form and enclose it with your [$XX.XX] payment in the envelope provided. In order to receive payment by [date], please mail no later than [date].

PLEASE SEE REVERSE SIDE FOR IMPORTANT INFORMATION.

Sincerely,
A. Syran
Senior Vice President, Operations & Marketing

*See* Complaint, Exs. A, C, E (emphasis in originals).

None of the letters contained a hand-written or mechanically-reproduced signature. Rather, they contained Mr. Syran's typewritten name. *See* Syran Decl. at ¶ 3. Mr. Syran approved of MCM's use of these form settlement letters, which accurately reflected the terms of settlement offers that MCM was willing to honor if accepted by the recipient. *See id.* at ¶¶ 4-5.

In addition to the text set forth on the front of the letters, the following language appeared on the back of each letter:

As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit-reporting agency if you fail to fulfill the terms of your credit obligations.

*See* Complaint, Exs. B, D, F.

## B.    The Allegations Of The Complaint

Cruz alleges that Mr. Syran "was not involved in the collection of [her] alleged debt," "did not author or personally direct the sending of the letter to [her]," and "did not have any meaningful involvement in or decision in the sending of the collection letter to [her]." *See id.* at ¶¶ 14-16. Cruz further alleges that MCM falsely, deceptively and misleadingly represented Mr. Syran's involvement in the collection of her debt, and unfairly and unconscionably used "a high level officer as the author and signator [sic]" of the letters. *See id.* at ¶¶ 31-

1   32.  Based on these allegations, Cruz asserts that Defendants violated sections

2   1692e, 1692e(9), 1692e(10) and 1692f of the FDCPA.  *See id.* at ¶¶ 28-30, 32.

3        Cruz also alleges that "Defendant falsely represents that a negative credit

4   report reflecting on [her] credit report would be submitted to a credit reporting

5   agency," when in fact, "the negative report had already been submitted."  *See id.* at

6   ¶ 33.  Consequently, Cruz maintains, sections 1692e, 1692e(10) and 1692f were

7   violated.  *See id.*

8   **III.   ARGUMENT**

9        **A.   Standards Governing Motions For Summary Judgment**

10       Summary judgment is appropriate when the "pleadings, depositions,

11  answers to interrogatories, and admissions on file, together with the affidavits, if

12  any, show that there is no genuine issue as to any material fact and that the moving

13  party is entitled to judgment as a matter of law."  *See* Fed. R. Civ. Proc. 56(c).  As

14  the moving parties, Defendants may discharge their burden by "'showing' – that

15  is, pointing out to the district court – that there is an absence of evidence to

16  support the nonmoving party's case."  *See Celotex Corp. v. Catrett*, 477 U.S. 317,

17  325 (1986); *accord Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)

18  (quoting *Celotex*).

19       To survive this motion for summary judgment, Plaintiff "must present

20  competent evidence that creates a genuine issue of material fact."  *See Federal*

21  *Election Comm'n v. Toledano*, 317 F.3d 939, 950 (9th Cir. 2002).  The materiality

22  of a fact is determined by the underlying substantive law.  *See State of Calif., on*

23  *Behalf of Calif. Dept. of Toxic Substances Control v. Campbell*, 138 F.3d 772, 782

24  (9th Cir. 1998).  "In short, 'summary judgment is appropriate if, on the record as a

25  whole, a rational trier of fact could not find for the non-moving party.'"  *Durkin v.*

26  *Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (affirming summary

27  judgment on FDCPA claims).

28

**B.    The FDCPA Was Passed To Prohibit Harassment And Abuse**

When evaluating Plaintiff's claims, it is useful to consider the FDCPA in its context.  When Congress enacted the FDCPA, it did not intend to restrict ethical collectors like MCM from offering debtors a chance to settle their accounts for less than the full amount owed.  In fact, Congress specified that one purpose of the Act was to "insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged . . . ."  15 U.S.C. § 1692(e).  The Act was passed in 1977 in an effort to protect consumers from serious threats, harassment, abuse and other deceptive practices that might be utilized by unscrupulous debt collectors.  *See* 15 U.S.C. § 1692; *Pressley v. Capital Credit and Collection*, 760 F.2d 922, 925 (9th Cir. 1985) (purpose of Act "is to protect consumers from a host of unfair, harassing, and deceptive debt collection practices without imposing unnecessary restrictions on ethical debt collectors") (citation omitted).  As the Ninth Circuit recently observed,

> The purpose of the FDCPA is to protect vulnerable and unsophisticated debtors from abuse, harassment and deceptive collection practices. . . . Congress was concerned with disruptive, threatening, and dishonest tactics. The Senate Report accompanying the Act cites practices such as 'threats of violence, telephone calls at unreasonable hours [and] misrepresentation of consumer's legal rights.' (Citation). **In other words, Congress seems to have contemplated the type of actions that would intimidate unsophisticated individuals and which, in the words of the Seventh Circuit, 'would likely disrupt a debtor's life.'** (Citation).

*Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 938-39 (9th Cir. 2007) (emphasis added).

The purpose of the FDCPA is to prevent harassment and abuse.  The interpretation of the FDCPA proffered by Cruz, which would penalize collectors who voluntarily send truthful, non-coercive form letters to debtors, is directly at odds with the purposes of the Act.

1
2

### C. Under The "Least Sophisticated Debtor" Standard, Any Bizarre, Unreasonable or Idiosyncratic Interpretation Of The Letters Must Be Rejected

3
4
5
6
7
8
9
10

This court applies the "least sophisticated debtor" standard in determining whether a collection letter sent to a debtor violates the FDCPA.  *See Wade v. Regional Credit Ass'n*,  87 F.3d 1098, 1100 (9th Cir. 1996).  Thus, the Letters must be viewed objectively – not subjectively – from the standpoint of whether they are likely to deceive or mislead a hypothetical "least sophisticated debtor." *See id.*; *Guerrero*, 499 F.3d at 934.  This is a question of law to be decided by the court.  *Swanson v. Southern Or. Credit Serv., Inc.*, 869 F.2d 1222, 1227 (9th Cir. 1989) (per curiam).

11
12
13
14
15
16

Courts that have adopted the "least sophisticated debtor" standard have acknowledged that it reflects the important balance between the need to protect consumers from deceptive and abusive collection practices, and the need to protect debt collectors from liability based upon unreasonable interpretations of collection letters.  *See Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993).  As the *Clomon* court explained:

17
18
19
20
21
22

> It should be emphasized that in crafting a norm that protects the naive and credulous, the courts have carefully preserved the concept of reasonableness.  [The] *FDCPA does not extend to every bizarre or idiosyncratic interpretation of a collection notice* but does reach a reasonable interpretation of a notice by even the least sophisticated.  Indeed, courts have consistently applied the least-sophisticated-consumer standard in a manner that protects debt collectors against liability for unreasonable misinterpretations of collections notices. . . .  Other courts have held that even the 'least-sophisticated-consumer' can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care.

23
24
25

*Id.* at 1319 (emphasis added, citations and quotation marks omitted); *see also Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1180 (9th Cir. 2006) (O'Scanlainn, J., concurring); *Wan v. Commercial Recovery Sys., Inc.*, 369

26
27
28

1    F. Supp. 2d 1158, 1162 (N.D. Cal. 2005) (citing *Clomon*).[1]  Even under the least

2    sophisticated debtor standard, common sense is not jettisoned at the courthouse

3    door.  Otherwise, every letter could violate the Act.  The Court should summarily

4    reject any unreasonable, non-sensical interpretation of MCM's letters.

5            **D.**    **There Is Nothing "False" About The Letters' Accurate Statement That Cruz's Failure To Fulfill Her Credit Obligations May Result In A Negative Report To A Consumer Reporting Agency**

6

7          Cruz alleges that the Letters "falsely" stated that a negative report may be

8    submitted to a consumer reporting agency if Cruz fails to fulfill her credit

9    obligation, in violation of section 1692e, 1692e(10) and 1692f of the FDCPA.  *See*

10   Complaint at ¶ 17, Exs. B, D and F.  But this statement is <u>not</u> false – it is true.

11   Summary judgment should be granted for Defendants on this claim.

12         The FDCPA prohibits a debt collector from using

13   [A]ny false, deceptive or misleading representation or means in connection with the collection of any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . . (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

14

15

16

17

18      [1] *See also Chuway v. National Action Fin. Servs.*, 362 F.3d 944, 949 (7th Cir.

19   2004) (noting that *Clomon* had "sensibly" added that the standard must be applied "in

20   a manner that protects debt collectors against liability for unreasonable misinterpretations of collection notices"); *White v. Goodman*, 200 F.3d 1016, 1020

21   (7th Cir. 2000) (Posner, C.J.) ("Any document can be misread.  The Act is not

22   violated by a dunning letter that is susceptible of an ingenious misreading, for then every dunning letter would violate it.  The Act protects the unsophisticated debtor,

23   but not the irrational one."); *Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d

24   1232, 1236 (5th Cir. 1997) (the standard "serves the dual purpose of protecting all consumers, including the inexperienced, the untrained and the credulous, from

25   deceptive debt collection practices and protecting debt collectors against liability for

26   bizarre or idiosyncratic consumer interpretations of collection materials"); *United States v. National Fin. Servs., Inc.*, 98 F.3d 131, 136 (4th Cir. 1996) (the standard

27   "prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding

28   and willingness to read with care.").

1  15 U.S.C. § 1692e.  The Act also prohibits a debt collector from using "unfair or

2  unconscionable means to collect or attempt to collect any debt."  *See id.* § 1692f.

3      Under the Fair Credit Reporting Act, MCM is a furnisher of credit

4  information, and is entitled to submit accurate information concerning Cruz and

5  her account to consumer reporting agencies.  *See, e.g.*, 15 U.S.C. § 1681s-2(a)

6  (discussing furnisher's duty to report accurate information concerning consumers).

7  Thus, if MCM reported negative information about Cruz, as she alleges, this

8  conduct is permitted by federal law.

9      There is nothing in the FDCPA that specifically <u>requires</u> MCM to truthfully

10  notify Cruz that her failure to pay her credit obligations may result in a negative

11  credit report, nor is there anything in the Act which specifically <u>prohibits</u> MCM

12  from notifying Cruz that her delinquent account may be reported.  *See* 15 U.S.C.

13  §§ 1692a - 1692o.

14      In fact, the notice Cruz is complaining about, which appears on the reverse

15  side of MCM's collection letters, is <u>expressly</u> permitted by California law.  *See*

16  Cal. Civ. Code § 1785.26 (mandating that consumers be notified of negative credit

17  reporting, and supplying the following model language: "As required by law, you

18  are hereby notified that a negative credit report reflecting on your credit record

19  may be submitted to a credit reporting agency if you fail to fulfill the terms of your

20  credit obligations.").  Thus, the challenged notice is permissible under state law.

21      Cruz's attack upon this phrase from MCM's letter must fail under the Ninth

22  Circuit's decision in *Wade*.  There, the defendant sent a letter seeking to collect a

23  debt, stating:

24      If not paid TODAY, it may STOP YOU FROM OBTAINING credit
        TOMORROW.  PROTECT YOUR CREDIT REPUTATION.  SEND

25      PAYMENT TODAY. . . .  DO NOT DISREGARD THIS NOTICE.  YOUR
        CREDIT MAY BE ADVERSELY AFFECTED.

26  *Wade*, 87 F.3d at 1099 (capitals in original).  The Ninth Circuit held that this

27  language did <u>not</u> violate section 1692e or section 1692e(10), because the letter

28

"properly informed [plaintiff] that failure to pay might adversely affect her credit reputation." *See id.* at 1100.  Under *Wade*, it is perfectly acceptable for MCM to remind Cruz of the potential adverse effects of her failure to pay.  *See also Dunlap v. Credit Protection*, 419 F.3d 1011, 1012 (9th Cir. 2005) (collection letter that "at worst, only vaguely and generally implies that the reader should pay his debt in order to protect his credit rating" did not violate the Act, citing *Wade*); *Durkin*, 406 F.3d at 417-18 (letter stating debt may be reported to credit bureaus did not violate FDCPA: "The letters encourage debtors to pay their debts by informing them of the possible negative consequences of failing to pay.").

Consistent with *Wade*, *Dunlap*, and *Durkin*, district courts around the country, including this Court, have evaluated similar language in collection letters and found no violation of the FDCPA.  *See Hapin v. Arrow Fin. Serv.*, 428 F. Supp. 2d 1057, 1061-62 (N.D. Cal. 2006) (letter stating that payment could help debtor "regain your financial future" did not violate FDCPA, citing *Wade*); *Jones v. CBE Group, Inc*., 215 F.R.D. 558, 556 (D. Minn. 2003) (stating "we will be obligated to report the debt to the three national credit reporting companies" did not violate the FDCPA:  "Adverse credit reporting is one of the debt collector's most important inducements to prompt payment."); *Hogan v. MKM Acquisitions, LLC*, 241 F. Supp.2d 896, 898 (N.D. Ill. Jan. 17, 2003) (no violation to offer to improve credit rating and remove trade line from credit report; "Even an unsophisticated debtor should realize that the fewer delinquent notices on one's credit report, the better one's credit rating will be."); *White v. Financial Credit Corp.*, 2001 WL 1665386, **1, 5 (N.D. Ill. Dec. 27, 2001) (offering a "chance" to "amend"credit report and to "improve" credit history did not violate Act).

Cruz's claim must fail in light of the Ninth Circuit's holdings of *Wade* and *Dunlap*.  Like the letter in *Wade,* MCM's letters properly and accurately advise Cruz of the possible negative effects on her credit reputation.  It is irrelevant that Cruz claims MCM had already submitted information about Cruz's account to the

1  consumer reporting agencies before the letters were sent.  Under federal law,

2  MCM did not have to tell Cruz in advance that it planned to report information to

3  the consumer reporting agencies.  There is no violation of the FDCPA here.

4  Summary judgment is proper on this claim.

5  **E.    The Use Of Mr. Syran's Name And Title Is Not False, Deceptive Or Misleading**

6       Cruz also asserts that Defendants violated sections 1692e, 1692e(9),

7  1692e(10) and 1692f of the FDCPA "by the use of false, deceptive, and

8  misleading representations as to the involvement of its Executive Vice President in

9  the collection of [her] debt."  *See* Complaint at ¶ 31.  But it does not violate the

10 FDCPA to include Mr. Syran's typewritten name and title on the letters.  Summary

11 judgment should be granted for Defendants on this claim.

12      Cruz does not allege that there are any false, misleading or deceptive

13 statements in the body of the letters.[2]  It is undisputed that the letters accurately

14 recite the terms of a settlement offer that MCM was prepared to honor, if accepted.

15 Cruz focuses <u>solely</u> on the typed name and title that appears at the bottom of the

16 letters, while <u>ignoring</u> the rest of the letters' language.  When deciding if MCM's

17 form settlement letters violate sections 1692e and 1692f, however, the Court must

18 read the letters as a whole.  *See Peter v. GC Servs. L.P.*, 310 F.3d 344, 349 (5th

19 Cir. 2002); *McStay v. I.C. Sys., Inc.*, 308 F.3d 188, 1919 (2d Cir. 2002); *Wilson v.

20 Quadramed*, 225 F.3d 350, 354 (3d Cir. 2000).  Since Cruz's proffered

21 interpretation is unreasonable when the letters are read as a whole, it must be

22 rejected.

23

24

25

26  [2] *Cf. Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1516-17 (9th Cir. 1994)
27  (observing that contradictory and inaccurate communications could support finding
    that collector used deceptive or misleading means in connection with collection of
28  debt, in violation of § 1692e(5), and reversing grant of summary judgment).

The least sophisticated debtor would not reasonably conclude that the executive whose name was typed at the bottom of the letters personally reviewed the account or decided to send the particular form letter. The language of each letter emphasizes that the settlement is being offered by the company as a whole, not by Mr. Syran personally. The letter states that the settlement opportunity is "offered to you **by Midland Credit Management, Inc.**, servicer of the above referenced account. *See* Complaint, Exs. A, C and E (emphasis added). This is reinforced by the statements that "**we** would like to offer you" an option to resolve your account, and that if "**we**" receive the payment by a certain date, then "**we** will consider the account balance paid in full!" *Id.* (emphasis added). There is no suggestion that the offer is coming from Mr. Syran, as opposed to the company.

The letters offered Cruz a generous option to resolve her indebtedness. MCM was entitled to collect the full amount due, but gave Cruz an opportunity to pay off her debt for up to seventy-five percent <u>less</u> than she owes. There is nothing harassing, abusive or deceptive in the letters. In fact, this Court, the Ninth Circuit and the Seventh Circuit have all approved the identical form settlement letter, rejecting the argument that the settlement offer was deceptive and misleading (albeit on different grounds). *See Kalinina v. Midland Credit Management, Inc.*, 2004 WL 3187150 (N.D. Cal. Aug. 10, 2004), *aff'd*, 2006 WL 22779326 (9th Cir. Aug. 9, 2006) (unpublished); *see also Jackson v. Midland Credit Management, Inc.*, 445 F. Supp. 2d 1015 (N.D. Ill. 2006), *aff'd sub nom. Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769 (7th Cir. 2007).[3]

Cruz's strained interpretation of these form settlement letters is directly at odds with the purpose of the FDCPA. The Ninth Circuit has emphasized that settlement of debts should be encouraged. *See, e.g., Guerrero*, 499 F.3d at 939-40

---

[3] Defendants note that the *Kalinina* case was prosecuted by Cruz's present counsel, Irving Berg of the Berg Law Group.

1   ("Congress in passing the Act sought to encourage the prompt and amicable

2   settlement of debts."). The Sixth Circuit also addressed the critical importance of

3   facilitating settlements in *Lewis v. ACB Bus. Servs.*, 135 F.3d 389 (6th Cir. 1998),

4   noting that to discourage debt collectors from sending non-coercive settlement

5   offers would be "plainly at variance with the policy of the legislation as a whole."

6   *Id.* at 399. Cruz's theory of recovery would unfairly penalize collectors who seek

7   to informally settle debts, ultimately harming consumers, contrary to Congress's

8   intent. The claims under sections 1692e and 1692f must fail.

9        Nor did Defendants violate section 1692e(9), which prohibits "[t]he use or

10  distribution of any written communication which simulates or is falsely

11  represented to be a document authorized, issued , or approved by any court,

12  official, or agency of the United States or any state, or which creates a false

13  impression as to its source, authorization or approval." 15 U.S.C. § 1692e(9).

14  Courts interpreting section 1692e(9) have concluded that the word "source" in that

15  provision refers to the <u>company</u> seeking to collect the debt. *See Youngblood v.*

16  *GC Servs. Ltd. Partnership*, 186 F. Supp. 2d 695, 700 (W.D. Tex. 2002); *Johnson*

17  *v. NCB Collection Servs.*, 799 F. Supp. 1298, 1307 (D. Conn. 1992). As the

18  *Youngblood* court explained:

19          [T]he intent of § 1692e is not to require that debt collectors use the real
            names of employees, but to ensure that debtors are made aware that they are
20          being contacted by **a particular debt collection agency**, which must
            identified clearly in the letter, and not someone or something with higher
21          authority or more draconian debt collection tactics. . . . Indeed, **the true
            source of the letters is not any particular individual, but the company,**
22          **corporation, partnership, etc.**, that is collecting the debt. The letter is
            unambiguous as to its source when the source is so defined.

23  *Youngblood*, 186 F. Supp. 2d at 700 (emphasis added). The Federal Trade

24  Commission has stated that section 1692e(9) is designed "'to discourage debt

25  collectors from attempting to use the authority of the government deceptively to

26  scare consumers into paying the debt at issue.'" *See Kuehn v. Cadle Co.*, 2007

27

28

WL 1064306, *5 (M.D. Fla. Apr. 6, 2007) (quoting FTC Informal Staff Letter, Nov. 26, 1993).

Here, it is undisputed that the letters identified MCM as their source, and there is no evidence that MCM was falsely representing that its form settlement letters were approved or authorized by the government. The section 1692e(9) claim must fail.

Cruz has identified <u>nothing</u> in the body of the letters that is false, misleading, deceptive, abusive or harassing. She focuses solely on Mr. Syran's typed name and title at the bottom of each letter. It is undisputed, however, that the letters accurately reflect that Mr. Syran <u>did</u> authorize the mailing of the form letters in his capacity as an officer of MCM. Taken as a whole, the least sophisticated debtor would not be deceived or misled by the letters in any meaningful way. Nor would any consumer be harmed by receiving a letter that offers a chance to retire a debt, once and for all, for only one-fourth of what the consumer owes. These truthful, non-coercive settlement letters do not violate the FDCPA. Defendants are entitled to summary judgment.

### F. The Ninth Circuit Has Never Adopted The "Meaningful Involvement" Doctrine And It Does Not Apply Here

Cruz alleges that Mr. Syran "did not have any meaningful involvement in or decision in [sic] sending of the collection letter[s]." *See* Complaint at ¶ 16. Defendants presume that Cruz will seek to rely upon cases holding that section 1692e(3) of the FDCPA imposes a requirement that an <u>attorney</u> who sends a letter to a debtor be "meaningfully involved" in the decision to do so. The Ninth Circuit has never recognized the "meaningful involvement" line of cases, however, and no meaningful involvement requirement applies here.

Section 1692e(3) of the FDCPA prohibits the "false representation or implication that any individual is an attorney or that any communication is from an attorney." 15 U.S.C. § 1692e(3). The Second Circuit has interpreted this

provision as imposing an affirmative requirement that an attorney be "meaningfully involved" when sending certain communications to debtors. *See Clomon*, 988 F.2d at 1320-21. The Seventh Circuit followed suit in *Avila v. Rubin*, 84 F.3d 222, 228-29 (7th Cir. 1996). The "meaningful involvement" line of cases has never been adopted by the Ninth Circuit.

There is nothing in the plain language of section 1692e(3), or anywhere else in the FDCPA, which refers to "meaningful involvement" by attorneys.[4] Nor is there any language in the FDCPA specifically requiring that any person whose name appears on (or who signs) a collection letter must be "meaningfully involved" in the decision to send the letter. *See* 15 U.S.C. §§ 1692-1692o. The Ninth Circuit has observed that courts should not read words into the FDCPA where Congress has not included them. *See Camacho v. Bridgeport Fin., Inc.*, 430 F.3d 1078, 1081 (9th Cir. 2005). There is no basis for reading the words "meaningful involvement" into any section of the FDCPA because Congress has decided not to include that phrase. The doctrine should not be embraced.

In addition, *Clomon* and *Avila* are factually distinguishable and the reasoning employed by those courts does not apply here. Neither case turned solely on the fact that the letters had been signed by an attorney. Rather, they were based on the appearance and language of the letters read as a whole. Unlike the letters at issue here, the letters in *Clomon* and *Avila* were sent on attorney letterhead, they contained the signature of an attorney, and, most importantly, the language of the letters contained false statements and threats. *See Clomon*, 988 F.2d at 1316-17, 1320; *Avila*, 84 F.3d at 228-29. In addition, the *Avila* court emphasized the special place that attorneys hold in society, and explained how that distinguished attorney letters from letters sent by a collection agency. *See* 84 F.3d at 229.

---

[4] Mr. Syran is not an attorney, nor does Cruz allege that he is.

Unlike the letters in *Clomon* and *Avila*, MCM's letters were sent on a collection company's letterhead, not a lawyer's letterhead.  They were <u>not</u> signed by an attorney – indeed, the MCM letters were not signed by anyone, mechanically or otherwise.  Rather, they contained Mr. Syran's typed name and title at the bottom.  MCM's letters do not contain any threats of imminent legal action if the settlement offer is not accepted.  In fact, the MCM letters are so passive that they do not even demand payment – they simply recite a "Settlement Opportunity."  There are no express or implied false repercussions if the debtor decides not to accept the settlement offer.

Nor are there any misrepresentations in the letters suggesting that Mr. Syran personally reviewed Cruz's account.  Rather, the letters make clear that the settlement is being offered by the company, by referring to "we," "us" and "Midland."  There is nothing that suggests or implies that MCM would escalate the matter to an attorney if Cruz did not accept the settlement offer.

Any suggestion that a senior executive is analogous to any attorney is incorrect and is contrary to *Clomon* and *Avila*.  Attorneys are unique, at least for purposes of the FDCPA, in that two circuit courts have concluded that the "least sophisticated consumer" reasonably assumes that attorneys will exercise professional legal judgment, and that they are subject to a variety of rules governing their conduct as professionals.  Furthermore, any consumer understands that an attorney can initiate a lawsuit, while an executive cannot.  A form letter from a collection agency offering a debtor the "positive and flexible option" to resolve a debt for significantly less than the amount due (which does not threaten any further action, let alone legal action) can hardly be said to "strike fear in the heart of the consumer" equivalent to that generated by a letter from a lawyer threatening legal action.  *Cf. Avila*, 84 F.3d at 229.  There is no legal basis for concluding that the "least sophisticated debtor" would equate an attorney and executive when reading collection letters that bear the executive's name.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### G.    Other District Courts Have Properly Refused To Equate Collection Company Executives And Attorneys

Other district courts have properly concluded that the "meaningful involvement" line of cases do not apply to letters "signed" by collection company executives.  For example, the Eastern District of Pennsylvania, applying the same "least sophisticated debtor" standard that this Court must apply, concluded as a matter of law that a collection letter bearing the typed name "James P. Rich, Jr., Chief Operating Officer," was <u>not</u> false, deceptive or misleading in violation of section 1692e or 1692e(10).  *See Womack v. National Action Fin. Servs.*, 2007 WL 2155669, **4-5 (E.D. Pa. July 25, 2007).  The court expressly declined to equate letters from attorneys with letters from officers.  *See id.* at *5.[5]

A district court in New York concluded that the use of "the phrase 'Executive Vice President'" in the signature block of a collection letter was not a violation of the FDCPA.  *See Rumpler v. Phillips & Cohen Assocs., Ltd.*, 219 F. Supp. 2d 251, 257 (E.D.N.Y. 2002).  There, the defendant, a debt collection firm, sent a letter on the firm's letterhead and bearing the following closing:

Sincerely,
Adam S. Cohen, Esq.
Executive Vice President

*Id.* at 253.  Distinguishing *Clomon*, the court rejected plaintiff's argument that the letter gave the false impression that it was personally reviewed by an attorney, in violation of section 1692e(10) of the Act.  *See id.* at 256-57.  The least sophisticated consumer would not interpret the letter as having been sent by a

---

[5]  *But see Campuzano-Burgos v. Midland Credit Management, Inc.*, 497 F. Supp. 2d 660 (E.D. Pa. 2007), *appeal pending*, No. 07-3770 (3d Cir.).  There, the district court held that a letter that is identical (other than bearing a different executive's name and title) to the letter at issue here violated section 1692e.  In doing so, the district court relied heavily upon section 1692e(3) and the *Clomon* and *Avila* cases.  *See id.* at 663-64.  Defendants submit that *Campuzano-Burgos* was wrongly decided.

1  lawyer, given that it was printed on the debt collector's letterhead and gave no

2  other indication that it was from a law firm or lawyer. *See id.* at 257.[6]

3      Similarly, any possible confusion that might result from the inclusion of Mr.

4  Syran's name and title in MCM's letters was "blunted" by the other language in

5  the letter, which made it clear that the letters were coming from MCM, the

6  company, not from any executive of the company.  The letters do not violate the

7  FDCPA, and Defendants are entitled to summary judgment as a matter of law.

8  **IV.    CONCLUSION**

9      For each of the foregoing reasons, Defendants respectfully request that the

10  Court enter an Order granting summary judgment in their favor on all claims

11  .

12  DATED:  February 15, 2007          SIMMONDS & NARITA LLP
                                        TOMIO B. NARITA
13                                       JEFFREY A. TOPOR

14

15                                  By:    /Tomio B. Narita/
16                                          Tomio B. Narita
                                           Attorneys for Defendants
17

18

19

20

21

22

23      [6]The court found that plaintiff "ascribes too much significance" to the inclusion

24  of the title "Esq." in the letter, and observed that "any effect in the reader's mind
    caused by including 'Esq.' after Cohen's name is blunted by the inclusion of the

25  phrase 'Executive Vice President' immediately below." *Id.; see also Kistner v. Law*

26  *Offices of Michael P. Margelefsky, LLC*, 2007 WL 120150, *4 (N.D. Ohio Jan. 10,
    2007) (concluding that fact that letter was sent on law firm letterhead was "'blunted'

27  by the specific language used in the notice and the fact that it was signed 'ACCOUNT

28  REPRESENTATIVE.'").