TOMIO B. NARITA (SBN 156576)
JEFFREY A. TOPOR (SBN 195545)
SIMMONDS & NARITA LLP
44 Montgomery Street, Suite 3010
San Francisco, CA 94104-4816
Telephone: (415) 283-1000
Facsimile:   (415) 352-2625
tnarita@snllp.com
jtopor@snllp.com

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DAMARIS CRUZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>MRC RECEIVABLES CORP.; MIDLAND CREDIT MANAGEMENT, INC.; A. SYRAN, an individual,<br><br>Defendants. | CASE NO.: C 07 05688 SC<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date: March 21, 2008<br>Time: 10:00 a.m.<br>Dept: Courtroom 1, 17th Floor<br><br>The Honorable Samuel Conti |

I.     **INTRODUCTION**

Plaintiff Damaris Cruz ("Cruz") contends that this case is about "common sense." Defendants agree. Common sense tells us that companies design "form" letters to be sent on an automated basis, without a manual review of each letter. Is it "common sense" for even the "least sophisticated debtor" to conclude that a form letter offering to settle a debt was actually drafted and manually approved by an executive of the company, simply because the executive's name and title is typed at the bottom of the letter? Defendants submit that it is not.

Even the least sophisticated debtor is "presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care."[1] While the Fair Debt Collection Practices Act (the "FDCPA") seeks to protect debtors against serious harassment, intimidation and abuse by debt collectors,[2] it also protects debt collectors against the bizarre, idiosyncratic and irrational interpretation of a collection letter, such as that being offered here by Cruz and her attorney.

This case is not about harassment, abuse, false statements, deception, or any other conduct or communication that might be disruptive to a debtor. Rather, Cruz and her experienced consumer counsel seek to penalize Defendants for sending her three truthful, non-coercive settlement letters. Cruz admits that she owed the money. She does not allege in her Complaint, nor does she testify in her

---

[1] *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993); *White v. Goodman*, 200 F.3d 1016, 1020 (7th Cir. 2000) (Posner, C.J.) ("Any document can be misread. The Act is not violated by a dunning letter that is susceptible of an ingenious misreading, for then every dunning letter would violate it. The Act protects the unsophisticated debtor, but not the irrational one.").

[2] *See, e.g., Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 938-39 (9th Cir. 2007) ("In other words, Congress seems to have contemplated the type of actions that would intimidate unsophisticated individuals and which, in the words of the Seventh Circuit, 'would likely disrupt a debtor's life.'").

1  declaration, that she was misled or confused by the settlement letters, or that they
2  disrupted her life in the slightest. It is undisputed that she owed the debt and that
3  Defendants had the right to report the debt as delinquent to the consumer reporting
4  agencies. Her case turns solely upon a tortured reading of the letters that no
5  consumer would employ, not even the hypothetical "least sophisticated
6  consumer."

7  This case is being driven by imagination and word-smithing. No violation
8  of the FDCPA has been identified in this record. Defendants' motion for summary
9  judgment should be granted, and Cruz's motion for partial summary judgment
10 should be denied.

11 **II.    ARGUMENT**

12     **A.    The Letters Accurately And Properly Advise Cruz That Her Failure To Fulfill Her Credit Obligations May Result In A**
13     **Negative Report To A Consumer Reporting Agency**

14 Cruz argues that the Letters are "false" even though they accurately inform
15 the debtor that a negative report "may be submitted" to a consumer reporting
16 agency if the debtor fails to fulfill her credit obligation. The undisputed record
17 shows that this <u>not</u> a false statement. As Cruz concedes, she owed the money.
18 Defendants had every right under federal and state law to submit a report
19 concerning the delinquent account to the consumer reporting agencies.

20 Nor is there evidence that the Letters are confusing, misleading or unfair
21 within the meaning of section 1692e or 1692f of the FDCPA. Cruz cannot
22 distinguish the Ninth's Circuit's holding in *Wade v. Regional Credit Ass'n*, 87
23 F.3d 1098 (9th Cir. 1996), where the Court found no violation of the FDCPA even
24 though the defendant's collection letter was far more forceful than the letters sent
25 by Midland. The letter in *Wade* stated:

26     If not paid TODAY, it may STOP YOU FROM OBTAINING credit TOMORROW. PROTECT YOUR CREDIT REPUTATION. SEND
27     PAYMENT TODAY.... DO NOT DISREGARD THIS NOTICE. YOUR CREDIT MAY BE ADVERSELY AFFECTED.
28

1  *Wade*, 87 F.3d at 1099 (capitals in original).  The Ninth Circuit held that this
2  language was "informational" and that it did <u>not</u> violate section 1692e or section
3  1692e(10) of the FDCPA, because the letter "properly informed [plaintiff] that
4  failure to pay might adversely affect her credit reputation." *Id.* at 1100.
5        Here, the notice on Midland's letters is also informational, and is far more
6  neutral in tone than the letter approved by the court in *Wade*.  The Midland notice,
7  which appears on the back of the letters, states:

> As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

10  *See* Complaint, Exs. B, D and F.  The tone used in Midland's notice pales in
11  comparison to the strong language in *Wade,* which contained all capital letters and
12  repeatedly told the debtor to pay "today" or their credit reputation might be
13  adversely affected.  *See Wade*, 87 F.3d at 1099.  Unlike the *Wade* letter, Midland's
14  letters never demand payment – they offer settlements – and the letters contain no
15  dire warnings of harm to the consumer's credit.  The FDCPA does not prohibit
16  Defendants from reminding Cruz of the potential adverse effects of her failure to
17  pay, nor does it prohibit Defendants from repeating their informational notice in
18  subsequent letters.  Given the language approved by the Ninth Circuit in *Wade*,
19  there can be no violation here.
20        According to Cruz, the notice used by Midland is "false."  She claims that
21  the original creditor, HSBC, had allegedly already reported the same account as
22  delinquent to the consumer reporting agencies, and Defendants had allegedly
23  already submitted negative information about Cruz.  *See* Opposition at 14.  Thus,
24  Cruz argues that her "credit report already bears the scars of her inability to pay
25  the debt to HSBC." *Id*.  There are several reasons why this argument lacks merit.
26        First, Cruz submits no admissible evidence to support her argument that the
27  account was previously reported as delinquent.  She has filed a declaration

CRUZ V. MRC RECEIVABLES ET AL. (CASE NO. C 07 05688 SC)
REPLY MEMO RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT     3.

1  attaching snippets from her alleged credit reports, along with her speculation about
2  how the Court should interpret those snippets. *See* Declaration of Damaris Cruz In
3  Support Of Plaintiff's Cross-Motion For Partial Summary Judgment ("Cruz
4  Decl."), ¶¶ 6-8, 11-12, Exs. A & B. The credit reports are inadmissible hearsay,
5  however, and Cruz's testimony about their alleged contents lacks foundation and
6  should not be considered. *See Beyene v. Coleman Sec. Servs.*, 854 F.2d 1179,
7  1181 (9th Cir. 1988) ("It is well settled that only admissible evidence may be
8  considered by the trial court in ruling on a motion for summary judgment.")
9  (citations omitted).[3] For the detailed reasons stated in the Objections to Evidence,
10 filed concurrently herewith, the Court should strike all of the testimony and
11 exhibits relating to Cruz's alleged credit reports.
12     Next, even if the Court credits the hearsay and speculation from the Cruz
13 declaration, there is still no violation. Cruz does not state that she was misled or
14 confused by the letters. Defendants may truthfully notify Cruz that they are
15 entitled to submit negative information about the account. This analysis is the
16 same even if the Court assumes that HSBC or Defendants had already reported the
17 debt as delinquent. Cruz seeks to construe the phrase "may be submitted" to mean
18 that the collector has not yet reported, but "might" report, negative information.
19 This is not a reasonable interpretation of the notice. It certainly is not the
20 interpretation given by the California legislature.
21     The notice used by Midland recites <u>verbatim</u> the model language that
22 appears in the California Civil Code. *See* Cal. Civ. Code § 1785.26(c)(2). The
23 Code permits the notice to be sent to the consumer either before <u>or</u> after the

---

[3] *See also Philbin v. Trans Union Corp.*, 101 F.3d 957, 961 nn. 1-2 (3d Cir. 1996) (excluding hearsay statements from credit grantors concerning alleged reasons for credit denials); *Baker v. Capital One Bank*, 2006 WL 173669, *5 (D. Ariz. Jan. 24, 2006) (excluding credit reports).

negative information has been reported about the consumer.[4] The notice may, but is not required to, include the date that the negative information was reported or will be reported.[5] Even if the notice is sent, the creditor is <u>not</u> required to submit negative information to the consumer reporting agencies.[6] If the creditor continues to report the account as delinquent, the Code also allows creditors to send the notice again, but the Code does not require it.[7]

This carefully-crafted statutory scheme reveals that the California legislature designed a notice to inform consumers about steps that creditors are <u>permitted</u> to take, not about steps that they are <u>required</u> to take. By informing the consumer that negative information "may be submitted" to consumer reporting agencies, consistent with California law, Midland properly communicated what it was <u>entitled</u> to do, not what it "might" do in the future.

Plaintiff's interpretation of the notice must be rejected as it would create a direct (and unnecessary) conflict between state and federal law. Under state law, a debt collector that furnishes information about California consumers <u>must</u> send the

---

[4] *Id*. § 1785.26(c) ("The notice shall be in writing and shall be delivered in person or mailed first class, postage prepaid, to the party's last known address, prior to or within 30 days after the transmission of the negative credit information.").

[5] *Id*. § 1785.26(c)(3) ("The notice may include, but shall not be limited to, particular information regarding an account or information respecting the approximate date on which the creditor submitted or intends to submit a negative credit report.").

[6] *Id*. at § 1785.26(c)(4) ("The giving of notice by a creditor as provided in this subdivision does not create any requirement for the creditor to actually submit negative credit information to a consumer credit reporting agency.").

[7] *Id*. at § 1785.26(b) ("After providing this notice, a creditor may submit additional information to a credit reporting agency respecting the same transaction or extension of credit that gave rise to the original negative credit information without providing additional notice.").

notice. *See* Cal. Civ. Code § 1786.26(b). Under Cruz's theory, however, if the debt was previously reported as delinquent by the original creditor, no debt collector could ever give the notice expressly required by California law without violating the FDCPA. This is a bizarre interpretation of the model California notice, and it does not support a claim for relief. Summary judgment in favor of Defendants is proper on this claim.

### B.    The Use Of Mr. Syran's Name And Title Is Not False, Deceptive Or Misleading

Cruz suggests that it was improper for Defendants to use Mr. Syran's typewritten name and title at the bottom of each letter to "stimulate" collection of the debt. *See* Opposition at 6. But the FDCPA does not prohibit using truthful collection letters to "stimulate" the collection of an admittedly unpaid debt. *See, e.g., Johnson v. Revenue Management Corp.*, 169 F. 3d 1057, 1059 (7th Cir. 1999) (noting that "bona fide debts that are overdue are, well, overdue, and payable pronto."). Every collection letter is designed to "stimulate" collection in some way, and if this were the standard, every letter would violate the Act.

Cruz first says the letters are "false" because Mr. Syran had "nothing to do with" sending them. *See* Opposition at 6. But Cruz ignores the undisputed record. In fact, Mr. Syran was aware of and approved of Midland's form settlement letters. *See* Declaration of James Alexander Syran in Support of Defendants' Motion For Summary Judgment, (Docket 17) ("Syran Decl."), ¶¶ 2-5. Cruz submits nothing to contradict this testimony. Cruz also does not dispute that the letters accurately set forth the terms of settlement offers that the company was willing to honor if accepted by the debtor. Her declaration is silent on these issues. There is nothing "false" in the letters.

Cruz next suggests that the letters are deceptive, because they imply Mr. Syran personally authored the letters and decided to send them, thereby somehow misrepresenting their "importance and urgency." *See* Opposition at 7. She

focuses solely on the name and title typed at the bottom of the letters, refusing to read the letters as a whole.[8] But when read as a whole, as they must be, the language used in these form letters emphasizes that a settlement is being offered by the company as a whole, not by Mr. Syran personally.

Cruz has not testified that she believed Mr. Syran personally authored her particular form letter and made the decision to put it in the mail. Nor has she explained how a letter offering to settle a debt for only 25% of what is owed becomes more "important and urgent" simply because it contains an executive's name and title typed at the bottom. No debtor, not even the hypothetical least sophisticated debtor, would interpret the letters in this manner. This interpretation appears to be an invention of counsel, as Cruz apparently is unwilling to submit sworn testimony to support it. *See Turner v. Asset Acceptance*, 302 F. Supp. 2d 56, 59 (E.D.N.Y. 2004) ("Plaintiff's attorney's willingness to advance such a far-fetched legal theory is due, in all likelihood, to the provisions in the consumer protection statute at issue affording statutory damages without proof of harm and the availability of class action treatment.").

Contrary to Cruz's suggestion, the fact that letters are settlement offers is important to the analysis. Collectors should not be penalized for offering debtors the opportunity to settle debts short of litigation. The Ninth Circuit and courts around the country have recognized that settlements should be encouraged.[9]

---

[8] The letters should be read as a whole by the Court. *See Peter v. GC Servs. L.P.*, 310 F.3d 344, 349 (5th Cir. 2002); *McStay v. I.C. Sys., Inc.*, 308 F.3d 188, 1919 (2d Cir. 2002); *Wilson v. Quadramed*, 225 F.3d 350, 354 (3d Cir. 2000).

[9] *See, e.g., Guerrero*, 499 F.3d at 939-40 ("Congress in passing the Act sought to encourage the prompt and amicable settlement of debts."); *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 399 (6th Cir. 1998) (to discourage debt collectors from sending non-coercive settlement offers would be "plainly at variance with the policy of the legislation as a whole.").

Nor did Defendants violate section 1692e(9), which prohibits "[t]he use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued , or approved by any court, official, or agency of the United States or any state, or which creates a false impression as to its source, authorization or approval." 15 U.S.C. § 1692e(9). Cruz never addresses the decisions which have properly interpreted the word "source" in section 1692e(9) to mean the <u>company</u> seeking to collect the debt. *See, e.g., Youngblood v. GC Servs. Ltd. Partnership*, 186 F. Supp. 2d 695, 700 (W.D. Tex. 2002); *Johnson v. NCB Collection Servs.*, 799 F. Supp. 1298, 1307 (D. Conn. 1992). Nor has Cruz addressed the guidance given by the Federal Trade Commission on this point.[10]

The letters identified Midland as their source. Even the least sophisticated debtor would understand that the source of the offer is the company, not Mr. Syran. The section 1692e(9) claim must fail.

At bottom, Cruz relies on a single district court opinion[11] and her counsel's fertile imagination. The almost complete "dearth of authority likely exists because only attorneys willing to engage in 'bizarre or idiosyncratic interpretations' of a collection notice would advance such claims." *See Turner*, 302 F. Supp. 2d 56, 59. As explained in Defendants' opening memorandum, the court's reasoning in *Campuzano-Burgos* is seriously flawed. In fact, permission to appeal pursuant to

---

[10] The FTC has stated that section 1692e(9) is designed "'to discourage debt collectors from attempting to use the authority of the government deceptively to scare consumers into paying the debt at issue.'" *See Kuehn v. Cadle Co.*, 2007 WL 1064306, *5 (M.D. Fla. Apr. 6, 2007) (quoting FTC Informal Staff Letter, Nov. 26, 1993). Cruz has not alleged that the letters suggest they were issued, approved or authorized by the government.

[11] *See Campuzano-Burgos v. Midland Credit Management, Inc.*, 497 F. Supp. 2d 660 (E.D. Pa. 2007), *appeal pending*, No. 07-3770 (3d Cir.).

28 U.S.C. § 1292(b)[12] was granted by the United States Court of Appeals for the Third Circuit.[13]  Cruz concedes by her silence that the "meaningful involvement" doctrine, which the court relied upon heavily in *Campuzano-Burgos*, has never been adopted by the Ninth Circuit.  Thus, cases which have applied the "meaningful involvement" doctrine to attorney collection letters,[14] and the sole district court case that has extended the doctrine – beyond any natural boundary – to agency collection letters, are neither controlling nor persuasive here.

## III.  CONCLUSION

Defendants respectfully request that the Court enter an Order granting summary judgment in their favor on all claims, and denying Plaintiff's motion.

DATED:  March 7, 2008              SIMMONDS & NARITA LLP
                                    TOMIO B. NARITA
                                    JEFFREY A. TOPOR


                                    By:   /Tomio B. Narita/
                                          Tomio B. Narita
                                          Attorneys for Defendants

---

[12]  That section provides as follows:  "When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: Provided, however, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order." 28 U.S.C. § 1292(b).

[13]  *See Campuzano-Burgos v. Midland Credit Management, Inc.*, No. 07-8044 (3d Cir. Sept. 11, 2007).

[14]  *See Clomon v. Jackson*, 988 F.2d 1314, 1320-21 (2d Cir. 1993); *Avila v. Rubin*, 84 F.3d 222, 228-29 (7th Cir. 1996).