United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DAMARIS CRUZ, individually and on behalf of all others similarly situated,

                    Plaintiff,

     v.

MRC RECEIVABLES CORP.; MIDLAND CREDIT MANAGEMENT, INC.; A. SYRAN, an individual,

                    Defendants.

                                    ) No. C-07-5688 SC
                                    )
                                    )
                                    )
                                    )
                                    ) ORDER GRANTING
                                    ) DEFENDANTS' MOTION
                                    ) FOR SUMMARY JUDGMENT
                                    ) AND DENYING
                                    ) PLAINTIFF'S CROSS
                                    ) MOTION FOR PARTIAL
                                    ) SUMMARY JUDGMENT
                                    )
                                    )
                                    )
                                    )
                                    )
                                    )

I.    **INTRODUCTION**

     Plaintiff Damaris Cruz brought this putative class action suit alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. See Compl., Docket No. 1. Defendants MRC Receivables Corp. ("MRC"), Midland Credit Management, Inc. ("Midland"), and James Alexander Syran ("Syran"; together with MRC and Midland, "Defendants") brought this Motion for Summary Judgment ("Motion"). Docket No. 16. Cruz opposed the Motion and moved for partial summary judgment on the issue of liability. Docket No. 20. Defendants filed a reply in support of their Motion and in opposition to Cruz's motion. Docket No. 24. Having considered the facts and the parties' legal arguments, the Court GRANTS Defendants' Motion and DENIES Plaintiff's motion.

**II.   <u>BACKGROUND</u>**

Plaintiff signed up for a credit card through Union Privilege and HSBC in August 2001.  Approximately one year later, she was unable to pay HSBC the balance due.  At that time, Plaintiff claims, HSBC notified her that it would submit a negative report to the credit bureau.[1]  Declaration of Damaris Cruz, Docket No. 21, ¶¶ 5-7 ("Cruz Decl.").  Plaintiff attached to her declaration a portion of her Experian credit report purportedly demonstrating that HSBC filed a negative report on her account in June 2002.  <u>Id.</u> Ex. A.

Plaintiff believes that HSBC subsequently sold Plaintiff's account to Defendant MRC in or around October 2004 and that MRC appointed Midland to collect the outstanding debt.  <u>Id.</u> ¶¶ 8, 9. According to Plaintiff's Complaint, Midland filed a negative report with the credit bureau in March 2007.  Compl. ¶ 17.

On April 11, May 23, and July 4, 2007, Midland sent Plaintiff collection notices, offering to settle her debt in full in exchange for immediate payment of a portion of the outstanding balance.  <u>Id.</u> Exs. A, C, E.  Each letter closes with the typewritten text:

> Sincerely,
> A. Syran
> Senior Vice President, Operations & Marketing

<u>See</u> <u>id.</u> Exs. A, C, E.  On the reverse side of each letter, Midland included the following notice:

---

[1]Defendants object to certain portions of Cruz's declaration and to the excerpts from her credit reports attached as exhibits to the declaration.  <u>See</u> Docket No. 25.  The Court addresses these objections below.

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1
2
3

> As required by law, you are hereby notified
> that a negative report reflecting on your
> credit record may be submitted to a credit-
> reporting agency if you fail to fulfill the
> terms of your credit obligations.

4

See id. Exs. B, D, F.

5
6

    Syran is the Senior Vice President, Operations and Marketing,

7

for Midland.  Declaration of James Alexander Syran, Docket No. 17,

8

¶ 1 ("Syran Decl.").  According to Syran, Midland sends form

9

settlement letters to its customers, offering to settle debts for

10

less than the full amount due.  Id. ¶ 2.  Syran approved the use

of his typewritten name and title on Midland's form settlement

11

letters.  Id. ¶¶ 3, 4.  Syran reviewed the letters Midland sent to

12

Plaintiff.  Id. ¶ 5.  According to Syran, the letters accurately

13

reflect the terms of Midland's settlement offers, and Midland

14

would have honored the terms if Plaintiff had accepted any of the

15

offers.  Id.

16

    Plaintiff filed this suit claiming that the letters she

17

received from Midland violated the FDCPA because Syran's name and

18

title appeared on the letters even though he did not actually

19

write the letters himself, and because the letters warned of a

20

possible negative report to the credit-reporting agencies, even

21

though such a report had already been made and was no longer

22

required by law.

23

24

**III. LEGAL STANDARD**

25

    Entry of summary judgment is proper "if the pleadings, the

26

discovery and disclosure materials on file, and any affidavits

27

28

show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).[2] "Summary judgment should be granted where the evidence is such that it would require a directed verdict for the moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). Thus, "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In addition, entry of summary judgment in a party's favor is appropriate when there are no material issues of fact as to the essential elements of the party's claim. Anderson, 477 U.S. at 247-49.

A party moving for summary judgment on an issue where it does not have the ultimate burden of persuasion at trial may satisfy its initial burden of production in one of two ways. "The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1106 (9th Cir. 2000). "Once the moving party carries its initial burden, the adverse

---

[2]Defendants' brief incorrectly quotes the previous text of Rule 56(c). The language of Rule 56 was amended, effective December 1, 2007. The changes were intended to be stylistic only. See Fed. R. Civ. P. 56 advisory committee's note.

United States District Court
For the Northern District of California

1   party 'may not rest upon the mere allegations or denials of the

2   adverse party's pleading,' but must provide affidavits or other

3   sources of evidence that 'set forth specific facts showing that

4   there is a genuine issue for trial.'" <u>Devereaux v. Abbey</u>, 263

5   F.3d 1070, 1076 (9th Cir. 2001) (quoting Fed. R. Civ. P.

6   56(e)(2)).

7

8   **IV.   <u>EVIDENTIARY ISSUES</u>**

9       Defendants object to paragraphs 5-12 of Cruz's declaration

10  and to the credit report excerpts attached to it.  <u>See</u> Docket No.

11  25 ("Obj.").  "It is well settled that only admissible evidence

12  may be considered by the trial court in ruling on a motion for

13  summary judgment." <u>Beyene v. Coleman Sec. Servs., Inc.</u>, 854 F.2d

14  1179, 1181 (9th Cir. 1988) (citing Fed. R. Civ. P. 56(e)).

15  Defendants argue that the evidence Cruz submitted, including the

16  majority of her declaration, is inadmissible because it is

17  hearsay, lacks foundation, and contains speculation.  <u>See</u> Obj.

18  Cruz did not respond to Defendants' objections.

19      Hearsay is an out-of-court statement offered to prove the

20  truth of the matter asserted.  Fed. R. Ev. 801(c).  Hearsay is not

21  admissible evidence unless it falls into one of a limited number

22  of exceptions defined in the Federal Rules of Evidence.  Fed. R.

23  Ev. 802; <u>see</u> <u>also</u> Fed. R. Ev. 803, 804.

24      Exhibit A to the Cruz Declaration, an excerpt from her

25  Experian credit report dated February 8, 2008, is inadmissible

26  hearsay.  Cruz offers Exhibit A to prove that HSBC filed a

27  negative credit report with Experian regarding Cruz's delinquent

28
                                   5

*United States District Court*
For the Northern District of California

account.  For example, Cruz states in her declaration, "In
reviewing my credit report, attached hereto as Exhibit A, HSBC
reported the account as charged off as of June 2002 to April
2003."  Cruz Decl. ¶ 6.  Cruz is not an employee of either HSBC or
Experian, and provides no foundation that would support allowing
this document into evidence under any of the exceptions to the
hearsay rule.  See Baker v. Capital One Bank, No. 04-1192, 2006
U.S. Dist. LEXIS 2625, at *15-17 (D. Ariz. Jan. 24, 2006) (citing
Beyene, 854 F.2d at 1183 n.4).

        For the same reasons that Exhibit A is inadmissible,
paragraphs 5, 6, 8, 9, and 10 of Cruz's declaration are also
inadmissible.  Paragraph 5 relates to an out of court statement
purportedly made by HSBC, a non-party, that a negative report
might be filed.  Cruz Decl. ¶ 5.  Such a statement is
inadmissible.  See Baker, 2006 U.S. Dist. LEXIS 2625 at *16-17
(excluding affidavit testimony based on inadmissible Experian
credit report).  Paragraph 6, quoted above, offers information
from the inadmissible credit report excerpt as proof that HSBC
filed a negative report.  Cruz Decl. ¶ 6.  In paragraph 8, Cruz
states, "The credit report also shows that the account 'was
purchased by another lender.'  I believe that reference to another
lender is reference to MRC Receivables Corp."  Id. ¶ 8.  As with
paragraph 6, this is simply a quotation from an inadmissible
document, followed by Cruz's unfounded speculation as to the
meaning of the quotation.  Nothing in Exhibit A refers to MRC.  In
paragraph 9, Cruz attempts to provide foundation for the assertion
that MRC purchased her account by comparing Exhibit A to the

United States District Court
For the Northern District of California

6

letters she received from Defendants.  <u>Id.</u>  ¶ 9.  However, Exhibit
A is itself inadmissible, and nothing in paragraph 9 that is not
taken from Exhibit A provides an additional basis for Cruz's
assertions.  Finally, paragraph 10 asserts that HSBC made
statements comparable to the notices contained on the collection
letters Cruz received from Defendants.  <u>Id.</u> ¶ 10.  As with
paragraph 5, HSBC's purported statement is inadmissible hearsay.

Exhibit B to the Cruz Declaration, an excerpt from her
TransUnion credit report dated February 8, 2008, is inadmissible
hearsay.  Like Exhibit A, Exhibit B is an out-of-court statement
made by a non-party (TransUnion), which Cruz offers to prove that
Defendants filed a negative credit report on her account.  Cruz
provides no foundation for admission of this document under any of
the exceptions to hearsay defined in the Federal Rules of
Evidence.  <u>See</u> <u>Capital Funding, VI, Inc. v. Chase Manhattan Bank</u>,
No. 01-6093, 2005 U.S. Dist. LEXIS 2212, at *5-6 (E.D. Pa. Feb.
11, 2005) (exclusion of TransUnion credit report appropriate where
Plaintiff did not offer testimony of qualified witness to
authenticate its contents pursuant to Federal Rule of Evidence
803(6)).

Paragraph 12 of Cruz's declaration contains her
interpretation of the inadmissible credit report she offered as
Exhibit B.  <u>See</u> Cruz Decl. ¶ 12.  As Cruz does not claim to be an
employee of either TransUnion or MRC, she has no foundation for
these assertions.  <u>See</u> <u>Baker</u>, 2006 U.S. Dist. LEXIS 2625 at *16-
17.  Based on two quotations from the inadmissible TransUnion
report, Cruz also asserts as a fact that the credit reporting

United States District Court
For the Northern District of California

7

notices included in the collection letters she received were

false.  See Cruz Decl. ¶ 12(B), 12(C).  The falsity of the

collection letters is the very question the Court must answer in

ruling on the instant motions.  The Court will not substitute

Cruz's legal opinion for its own.

For the foregoing reasons, Defendants' objections to Exhibits

A and B and paragraphs 5, 6, 8, 9, 10, and 12 of the Cruz

Declaration are sustained.  Those portions of the Cruz Declaration

are stricken.  The Court will not consider this evidence in ruling

on the instant motions.  Beyene, 854 F.2d at 1181.

Paragraphs 7 and 11 of Cruz's declaration state that she

ordered the credit reports contained in Exhibits A and B from

Experian and TransUnion.  See Cruz Decl. ¶¶ 7, 11.  Defendants

object to these paragraphs as hearsay and speculation.  The

objections are overruled.  Neither paragraph contains an out-of-

court statement or speculation of any kind.  Each merely serves to

authenticate one of the exhibits.  As the exhibits in question are

inadmissible for other reasons, these statements have little

impact.

**V.    DISCUSSION**

Cruz argues that the use of Syran's name on the letters from

Midland violates 15 U.S.C. §§ 1692e and 1692f.  Cruz also argues

that including the notice of a possible negative report to the

credit-reporting agencies violates the same statutory provisions.

The Court disagrees.

///

8

**United States District Court**
For the Northern District of California

**A.   Statutory Framework**

The FDCPA states that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e. The statute then provides a non-exclusive list of prohibited practices, two of which Cruz claims Defendants committed.  The first is "[t]he use or distribution of any written communication which . . . creates a false impression as to its source, authorization, or approval." Id. § 1692e(9).  The second is the "use of any false representation or deceptive means to collect or attempt to collect any debt . . . ."  Id. § 1692e(10).  Under 15 U.S.C. § 1692f, "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." Like section 1692e, section 1692f includes a non-exclusive list of prohibited practices.  Plaintiff argues that Defendants violated section 1692f, but does not identify specific conduct listed in the statute.

The Court uses a "least sophisticated debtor" standard in evaluating FDCPA claims. Wade v. Reg'l Credit Ass'n, 87 F.3d 1098, 1100 (9th Cir. 1996).  "Although this standard is objective, the standard is lower than simply examining whether particular language would deceive or mislead a reasonable debtor." Swanson v. S. Or. Credit Serv., Inc., 869 F.2d 1222, 1227 (9th Cir. 1988). The Court must balance this debtor-friendly framework by protecting legitimate debt collectors from unreasonable interpretations of collection letters. Clomon v. Jackson, 988 F.2d 1314, 1320 (2d Cir. 1993) (the FDCPA "(1) ensures the

9

protection of all consumers, even the naive and the trusting, against deceptive debt collection practices, and (2) protects debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices."); <u>White v. Goodman</u>, 200 F.3d 1016, 1020 (7th Cir. 2000) ("Any document can be misread. The Act is not violated by a dunning letter that is susceptible of an ingenious misreading, for then every dunning letter would violate it.  The Act protects the unsophisticated debtor, but not the irrational one."); <u>Wan v. Commercial Recovery Sys., Inc.</u>, 369 F. Supp. 2d 1158, 1162 (N.D. Cal. 2005).

### B.   Use of Syran's Name and Title

In her Opposition, Plaintiff argues that "it is deceptive and misleading to the consumer to state or imply that a high-ranking officer of the company was sending Plaintiff a collection notice when that person had nothing to do with it."  Opp'n at 6. Plaintiff further asserts that the use of Syran's name and title in the collection letters violates the general prohibition of section 1692e, as well as the specific prohibitions of sections 1692e(9) and 1692e(10).  <u>See</u> <u>id.</u> at 7.

As an initial matter, the Court notes that Cruz offered no admissible evidence whatsoever supporting her claim that Syran was not personally involved in the letters.  Although the letters are form letters, Syran read them, agrees that Defendants would abide by their terms, and approved of the use of his name.  <u>See</u> Syran Decl. ¶¶ 4, 5.  Syran's uncontested testimony satisfies Defendants' burden at this stage, obliging Cruz to produce evidence in response.  <u>See</u> <u>Nissan Fire & Marine</u>, 210 F.3d at 1107;

United States District Court
For the Northern District of California

Fed. R. Civ. P. 56(e)(2).  Cruz's failure to produce such evidence is sufficient basis for the Court to grant Defendants' Motion. See Devereaux, 263 F.3d at 1076 ; Baker, 2006 U.S. Dist. LEXIS 2625 at *18-19 (granting motion for summary judgment where plaintiff offered no evidence other than inadmissible credit report and related testimony).

Even if Cruz had submitted evidence demonstrating Syran's lack of involvement, the Court's conclusion would be no different. The purported statutory violations here are premised on the same notion — that the least sophisticated consumer would see Syran's name and believe that a senior executive had sent the letter personally, falsely implying that the letter was therefore more important and urgent than a regular collections letter.  The Court disagrees with the premise.

The Court reads each letter in its entirety to determine whether it is misleading or deceptive.  See, e.g., Peter v. GC Servs. LP., 310 F.3d 344, 349 (5th Cir. 2002) ("When the letter is read as a whole, however, we conclude that these lines do not misrepresent, contradict, or overshadow the language explaining plaintiff debtor's statutory rights."); McStay v. I.C. Sys., Inc., 308 F.3d 188, 191 (2d Cir. 2002) ("when the letter here is read in its entirety, it contains no contradiction and creates no reasonable confusion . . . .").  Upon review of the letters in question, the Court finds that even the least sophisticated debtor would not believe that Syran had personally reviewed the debtor's account and authored the letter.  Even if such a debtor did believe Syran had authored the letter, that alone would not be

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   sufficient basis for concluding that the letter was therefore more

2   important than it might otherwise appear.  The letters are quite

3   obviously form letters, and the Court believes this would be clear

4   even to the least sophisticated debtor.  Each letter contains a

5   letter code, a "tear off" portion to be returned with payment, a

6   bar code, a toll-free telephone number, Midland's hours of

7   operation, and displays Plaintiff's account number in multiple

8   places.  <u>See</u>, <u>e.g.</u>, Compl. Ex. A.  Further, the letters have

9   Midland's logo and return address at the top of the page, rather

10  than Syran's name, and the "Acceptance Certificate" attached to

11  the letter has Midland's mailing address, not Syran's name.  <u>Id.</u>

12  The actual text of the letter demonstrates that it is Midland,

13  rather than merely Syran, making the settlement offer to

14  Plaintiff.  <u>See id.</u> ("settlement opportunity offered to you by

15  Midland Credit Management," "we would like to offer you a positive

16  and flexible option," "any of our Account Managers will be able to

17  assist you").  By contrast, there is nothing else in any of the

18  letters to support Plaintiff's interpretation.

19      As legal support for her position, Plaintiff points the Court

20  to the decision in <u>Campuzano-Burgos v. Midland Credit Management,</u>

21  <u>Inc.</u>, 497 F. Supp. 2d 660 (E.D. Pa. 2007) ("<u>Campuzano</u>").  The

22  plaintiff in <u>Campuzano</u> took the same position Cruz takes here,

23  that the name of a Midland executive on a form letter violates the

24  FDCPA, and the court agreed:

25          Here, the use of top executives of the company
            as signatories is likely meant to impress upon
26          debtors the seriousness of the communication
            and will almost certainly have such an effect
27          on at least some debtors.  Because the parties

28                                  12

**United States District Court**
For the Northern District of California

1              have stipulated that those executives did not
            review plaintiffs' cases, and because the

2              signature of an executive, no less than the
            signature of an attorney, conveys that the

3              executive had <u>some</u> actual involvement in the
            decision to send the letter to a particular

4              debtor, we find that the letters here are
            deceptive and misleading within the meaning of

5              section 1692e.

6  <u>Id.</u> at 665 (emphasis in original).  The <u>Campuzano</u> court based its

7  conclusion in part on a comparison between executives and

8  attorneys:

9              But a lawyer is not the only figure who can
            get the debtor's knees knocking.  An

10              escalation from a lowly collection agent to a
            senior executive of the company could

11              similarly demonstrate to a consumer that the
            debt collector means business.  It is, of

12              course, no accident that MCM used the names
            <u>and</u> titles of its executives on the collection

13              letters at issue here.  They expect, either
            based on research they may have conducted or

14              just as a matter of common sense, that a title
            such as "President" or "Executive Vice

15              President" connotes authority and is more
            likely to generate a response.

16

17  <u>Id.</u> at 663 (emphasis in original).  However, there is a specific

18  prohibition in the FDCPA against "[t]he false representation or

19  implication that any individual is an attorney or that any

20  communication is from an attorney."  29 U.S.C. § 1692e(3).  No

21  such prohibition exists for letters from non-attorney executives.

22  Further, the court in <u>Campuzano</u> relied on the Second Circuit's

23  decision in <u>Clomon</u>, <u>supra</u>, for the proposition that "'The use of

24  an attorney's signature on a collection letter implies that the

25  letter is 'from' the attorney who signed it; it implies, in other

26  words, that the attorney directly controlled or supervised the

27  process through which the letter was sent.'"  <u>Campuzano</u>, 497 F.

28                          13

**United States District Court**
For the Northern District of California

Supp. 2d at 663 (quoting <u>Clomon</u>, 988 F.2d at 1321). In <u>Clomon</u>, however, the attorney's signature was the basis for the court's holding that the collection letter violated section 1692e(3), not section 1692e(10). <u>Clomon</u>, 988 F.2d at 1321. The violation of section 1692e(10) was based on other specific statements in the letter:

> The letters stated that Jackson was "suggesting" certain measures be taken "to further implement the collection of your seriously past due account"; that Jackson had received 'instructions' from his client "to pursue this matter to the furthest extent we deem appropriate"; that Jackson had 'told' his client that it could "lawfully undertake collection activity to collect your debt"; and that Jackson had "scheduled" Clomon's debt for 'immediate review and/or further action as deemed appropriate."

<u>Id.</u>

Another district court considered precisely the same question and came out on the opposite side of <u>Campuzano</u>. <u>See</u> <u>Womack v. Nat'l Action Fin. Servs.</u>, No. 06-4935, 2007 U.S. Dist. LEXIS 54206, at *2 (E.D. Pa. July 25, 2007). In <u>Womack</u>, as here, the defendant sent a letter signed by a non-attorney executive. <u>Id.</u> The only basis for the alleged FDCPA violation in <u>Womack</u> was the use of the chief operating officer's name and title in the letter. The court granted the Defendant's motion to dismiss, finding that even the least sophisticated debtor would not be misled about the urgency of the letter simply because of the executive's name, and refused to extend the attorney-communication rules of 1692e(3) to non-lawyer executives. <u>Id.</u> at *13-15. Even where the executive in question was also an attorney, and the letter included "Esq." after his name, another district court found that the least

14

sophisticated consumer could "not reasonably interpret the Letter as having been issued by an attorney" and that the letter was not a violation of the FDCPA merely for inclusion of the name and title.  See Rumpler v. Phillips & Cohen Assocs., Ltd., 219 F. Supp. 2d 251, 257 (E.D.N.Y. 2002).

By contrast, nothing in Campuzano or Clomon supports a finding that the use of Syran's name and title on the letter violated section 1692e.  Cruz explicitly disclaims the application of section 1692e(3), as Syran is not an attorney.  See Opp'n at 11-12.  Beyond analogizing an executive to an attorney, the Campuzano ruling merely relied on Clomon, but such reliance is inappropriate here, where Cruz does not take issue with any part of the collection letter other than Syran's name.  The Campuzano court referred to an "escalation" from a collection agent to an executive, see 497 F. Supp. 2d at 663, but all of the letters Cruz received bore Syran's name, so there was no escalation from a lower-ranked employee to Syran.  Further, the Campuzano court's supposition about why the defendants used an executive's name on the letter has no bearing on the outcome.  Liability does not turn on whether or not a debt collector intends to collect a debt or why a collector chooses a particular method for encouraging payment; rather, section 1692e liability is premised on what the debtor is likely to believe.  Mass mailings and form letters are a reality of modern business that would be understood even by the least sophisticated debtor.  That Syran might not have personally reviewed Cruz's file or authored the letters she received would not change this outcome.  The Court finds the rulings in Womack

United States District Court

For the Northern District of California

and <u>Rumpler</u> persuasive, and concludes that the use of Syran's name

on the letters Cruz received was not misleading or deceptive, and

therefore did not violate section 1692e.  Nor was the use of

Syran's name unfair or unconscionable, so Defendants did not

violate section 1692f.

      **C.**   **Warning Regarding Possible Negative Credit Report**

     Each of the letters Cruz received from Defendants contained

the following disclosure on the back of the page:

> As required by law, you are hereby notified
> that a negative credit report reflecting on
> your credit record may be submitted to a
> credit-reporting agency if you fail to fulfill
> the terms of your credit obligations.

<u>See</u> Compl. Exs. B, D, F.  Cruz argues that the notice violates

sections 1692e, 1692e(10), and 1692f.  The basis for this argument

is unclear.  In the First Cause of Action in Cruz's Complaint, she

appears to argue that Defendants' statement that they may submit a

negative credit report is false:

> 33.  Defendant falsely represents that a
> negative credit report reflecting on
> Plaintiff's credit report would be submitted
> to a credit reporting agency, violating 15
> U.S.C. § 1692e, § 1692e(10), and § 1692f, as
> an unfair and unconscionable means to collect
> a debt, as the negative report had already
> been submitted.

Compl. ¶ 33.  In her Opposition to Defendants' Motion, in which

she moves for summary judgment on the question of liability, Cruz

focuses her argument not on whether Defendants submitted a

negative credit report (or could lawfully do so), but on whether

they were legally required to provide notice if they did so.  <u>See</u>

Opp'n at 9-11.  Even within the Opposition, it is unclear whether

**United States District Court**
For the Northern District of California

conduct that allegedly violates the FDCPA is the warning of a

possible negative credit report, or the statement that such a

warning is required by law.  Comparison of two passages

illustrates this inconsistency:

> Defendants' collection letters, dated
> from April 11, 2007 through July 4, 2007, warn
> of a legal requirement that a negative credit
> report may be issued to the credit bureaus for
> Plaintiff's failure to fulfill the terms of
> her credit obligations.
> This collection tactic is false, because
> a negative credit report was issued by the
> original creditor, HSBC, in 2002, and
> Defendants issued a negative credit report in
> 2004.

Opp'n at 9 (citations omitted).  Plaintiff then asserts that a

subsequent warning is not required:

> Defendant[s] argue[] that the subsequent
> representation is allowed.  Defendants cite to
> Cal. Civ. Code § 1785.26, arguing that the
> statute mandates the notification of a
> negative credit report.  It is false to
> represent that the law requires a further
> report when the negative report has already
> been made.
> The statute specifically precludes a
> requirement that additional notice be given.

Id.  Between the Complaint and the Opposition, Plaintiff appears

to identify three possible problems with the notice in Defendants'

letters:

1.    Defendants falsely stated that they would submit a

      negative credit report to the credit-reporting agencies

      if Plaintiff failed to fulfill her obligation.

2.    Defendants falsely stated that they were required to

      submit a negative credit report to the credit-reporting

      agencies if Plaintiff failed to fulfill her obligation.

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

3.    Defendants falsely stated that they were required to
notify Plaintiff that they might submit a negative
credit report if she failed to fulfill her obligation.

None of these three supports a finding that Defendants
violated the FDCPA.  The first two possible interpretations of
Plaintiff's claim are simply false, and the third would require an
unreasonable interpretation of the letter beyond that of even the
least sophisticated consumer.  The Court addresses each in turn.

The first, taken from Paragraph 33 of the Complaint, is
entirely without support.  Nowhere in any of the letters
Defendants sent to Cruz did they say that they <u>would</u> submit a
negative credit report.  The notice only states that "a negative
credit report reflecting on your credit record <u>may</u> be submitted."
Compl. Ex. B (emphasis added).  Cruz cannot base her claim for
violation of the FDCPA on a statement Defendants did not make, as
that would require a plainly unreasonable interpretation of the
letters in question.

The second similarly misstates the notice.  Defendants never
stated that there is a "legal requirement that a negative credit
report may be issued" under any circumstances.  As Defendants did
not make this statement, holding them liable for it under the
FDCPA would also require an unreasonable interpretation of the
FDCPA.

The third possible problem with the notice, which was never
clearly stated in the Complaint, is the only one which is remotely
viable.  Cruz argues that because the original creditor, HSBC, and

18

Defendants had both previously submitted negative credit reports to credit reporting agencies, the notice contained in the letters was not required. Therefore, Cruz concludes, it is false to say that the notice was "required by law," so Defendants violated sections 1692e and 1692e(10).

Defendants argue that the notice they included was permitted under both federal and California law. Mot. at 8. Whether the notice was permitted and whether it was required are distinct questions. Generally speaking, both state and federal law require that when a creditor submits negative information to a credit-reporting agency, it must provide notice to the debtor. <u>See</u> Cal. Civ. Code § 1785.26(b); 15 U.S.C. § 1681S-2(a)(7)(A)(i). However, both the California and federal statutes have provisions making subsequent notice unnecessary once the initial notice has been sent. <u>See</u> Cal. Civ. Code § 1785.26(b) ("After providing this notice, a creditor may submit additional information to a credit reporting agency respecting the same transaction or extension of credit that gave rise to the original negative credit information <u>without providing additional notice</u>.") (emphasis added); <u>see also</u> 15 U.S.C. § 1681S-2(a)(7)(A)(ii) (same).

Cruz's claim fails for two reasons. First, Cruz offered no admissible evidence to prove that either HSBC or Defendants had previously notified her that they might file negative credit reports on her account. Nor did she offer any evidence that HSBC or Defendants had actually filed such a negative credit report. Absent such evidence, there can be no doubt that the notice contained in the collection letters Defendants sent Cruz was

19

United States District Court
For the Northern District of California

1    required by law, so the Court must grant Defendants' Motion on

2    this issue.  See Cal. Civ. Code § 1785.26(b); 15 U.S.C. § 1681S-

3    2(a)(7)(A)(i); Baker, 2006 U.S. Dist. LEXIS 2625 at *18-19.

4         Cruz's claim fails for a second significant reason.  Even if

5    Defendants had previously sent Cruz a notice that her failure to

6    satisfy her debt might result in submission of a negative credit

7    report, the Court would find no statutory violation.  Additional

8    negative credit reports are not prohibited, so Cruz's suggestion

9    that her "credit report already bears the scars of her inability

10   to pay the debt" is pointless.  Not only could Defendants have

11   submitted additional negative credit reports lawfully, they could

12   have notified Cruz of those reports without running afoul of the

13   FDCPA.  Whether the letters said the notice was "required by law"

14   or "permitted by law" or made no such reference at all, Cruz's

15   credit report would not have been safe.  No part of the letters

16   was false with regard to the amount of Cruz's debt or the possible

17   consequences of her continued failure to pay that debt.  Nothing

18   in the credit reporting notice can be seen as unfairly inducing

19   Cruz to take an action she might otherwise not take.  Read in the

20   context of the letters as a whole, the credit reporting notices

21   would not have been misleading or unfair to the least

22   sophisticated consumer.  As such, even if Cruz had proven that

23   Defendants previously submitted a negative credit report on her

24   account, which she did not, she would still have failed to prove a

25   violation of sections 1692e, 1692e(10), and 1692f.

26   ///

27   ///

28                                    20

United States District Court
For the Northern District of California

## VI. CONCLUSION

For the foregoing reasons, the Court finds that there are no material facts requiring resolution at trial. On the evidence submitted, the Court concludes that Defendants did not violate any portion of the FDCPA. The Court therefore GRANTS Defendants' Motion for Summary Judgment and DENIES Plaintiff's Cross-Motion for Summary Judgment.

IT IS SO ORDERED.

Dated: July 3, 2008

UNITED STATES DISTRICT JUDGE